IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KAREN MORGAN, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. TJS-22-1633 |
| DICK'S SPORTING GOODS, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \*

**MEMORANDUM AND ORDER**

A display sign should not fall onto a customer's head when they are shopping in a store. This unremarkable proposition has yielded over 1,000 pages of briefing and supporting exhibits. In this case, a jury could find that a sign fell on the plaintiff's head and injured her. And the jury would not need an expert's help to find the storeowner negligent for the falling sign. Summary judgment will be denied and the case will proceed to trial.

**I.     Introduction**

On July 12, 2019, Plaintiff Karen Morgan went shopping for her son at Defendant's Dick's Sporting Goods ("DSG") store in Gaithersburg, Maryland.[1] As she walked through the store, she stopped to look at a display of women's clothing. After she stooped down to look at the clothes on the bottom shelf, she felt a sudden pain on the top of her head. When she looked around, she saw a sign laying on the ground beside her. The sign was a large but lightweight object. Ms. Morgan did not notice the sign before the incident and she does not know why it fell. No one saw the sign

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals if an appeal is filed. ECF Nos. 15 & 16.

fall but a DSG employee heard a loud bang around the time it happened. Plaintiffs allege that they were injured after Ms. Morgan was struck by the sign.

This lawsuit followed. The parties have completed discovery and DSG now moves for summary judgment. ECF No. 49. DSG argues it is entitled to summary judgment because Plaintiffs cannot establish that it violated the standard of care or even what caused Ms. Morgan's injury. Having considered the submissions of the parties (ECF Nos. 49, 50, 55, 56, 57, 60, 62, 66, 67, 70, 79 & 80), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Court will deny DSG's motion for summary judgment because the circumstances of this case justify the invocation of the doctrine of *res ipsa loquitur*. The Court will deny as moot DSG's Motion to Strike Exhibits because the exhibits in question played no role in the Court's decision, and the motion is otherwise premature. And the Court will grant DSG's motion to exclude Plaintiffs' expert because his opinions are not helpful.

**II.     DSG's Motion for Summary Judgment**

    **A.     Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict for the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Yet the "mere existence of a scintilla of evidence in support of the [opposing party's] position" cannot defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest on the mere allegations or denials of its pleading but must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and affirmatively show the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### B. Negligence in Maryland

To prevail on a claim of negligence in Maryland,[2] a plaintiff must prove the following elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999) (internal quotation marks omitted). As a preliminary matter, "no presumption of negligence arises merely because an injury was sustained on a storekeeper's premises." *Giant Food, Inc. v. Mitchell*, 334 Md. 633, 636 (1994).

"An occupier of land has a duty to use reasonable and ordinary care to keep the premises safe for an invitee and to protect him from injury caused by the unreasonable risk that the invitee,

---

[2] Because this case is before the Court on the basis of diversity, the Court applies the substantive law and choice of law rules of the state in which it sits. *See State Farm Fire & Cas. Co. v. Huguely*, 432 F. Supp. 3d 587, 591 (D. Md. 2020) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Maryland adheres to the *lex loci delicti* rule to determine the applicable law in tort actions. *Philip Morris, Inc. v. Angeletti*, 358 Md. 689, 744 (2000). Under this rule, the "substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). Because the incident occurred in Maryland, Maryland law applies.

3

by exercising ordinary care for his own safety, will not discover."[3] *Henley v. Prince George's County*, 305 Md. 320, 339 (1986). Stated differently, a landowner possesses a duty to an invitee "to exercise ordinary care to keep the premises in a reasonably safe condition and will be liable for injuries sustained in consequence of a failure to do so." *Maans v. Giant of Maryland*, L.L.C., 161 Md. App. 620, 627 (2005) (quoting *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 117 (1955)). Accordingly, "[t]he duties of a business invitor . . . include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers." *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388 (1997); *see also Duncan-Bogley v. United States*, 356 F. Supp. 3d 529, 538 (D. Md. 2018) ("The duty owed to an invitee is to use reasonable and ordinary care to keep the premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover.") (quoting *Casper v. Charles F. Smith & Son, Inc.*, 316 Md. 573, 582 (1989)).

A landowner is not an insurer of an invitee's safety while on its property. *Moulden v. Greenbelt Consumer Services, Inc.*, 239 Md. 229, 232 (1965). If a customer is injured in a store, "[t]he burden is upon the customer to show that the proprietor . . . had actual or constructive knowledge that the dangerous condition existed," and that "that knowledge was gained in sufficient time to give the owner the opportunity to remove [the danger] or warn the invitee." *Rehn v. Westfield Am.*, 153 Md. App. 586, 593 (2003) (internal quotation omitted). "What will amount

---

[3] The standard of care that the owner or occupier of land owes depends on the status of the person who enters the property. *Rowley v. Mayor & City Council of Baltimore*, 305 Md. 456, 464 (1986). "An invitee is one invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business." *Bramble v. Thompson*, 264 Md. 518, 521 (1972). The parties do not dispute that Ms. Morgan was a business invitee of DSG.

to sufficient time . . . involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions." *Rehn*, 153 Md. App. at 593 (citing *Deering Woods Condo Ass'n v. Spoon*, 377 Md. 250, 264 (2003)) (internal quotation marks omitted).

## C. *Res Ipsa Loquitur*

In some cases, a plaintiff may use the doctrine of *res ipsa loquitur* to establish a prima facie case of negligence. *See Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637, 641 (D. Md. 2012). When it is available, *res ipsa loquitur* permits (but does not require) a factfinder to use circumstantial evidence to infer negligence as the cause of an accident. *Id.* (citing *Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 335 (2004); *Tucker v. Univ. Specialty Hosp.*, 166 Md. App. 50, 58-59 (2005)). *Res ipsa loquitur* is a rule of evidence; it is not a rule of pleading or an independent cause of action. *Hughes v. Costco Wholesale Corp.*, No. LKG-23-2997, 2024 WL 2882179, at *3 (D. Md. June 7, 2024) (citing *Norris*, 159 Md. App. at 329). And it does not shift the burden of proof from plaintiff to defendant. *Munzert v. American Stores Co.*, 232 Md. 97, 103 (1963) (explaining that once the doctrine is invoked, the "defendant has the duty of going forward with the evidence to explain or rebut, if he can, the inference that he failed to use due care").

To invoke *res ipsa loquitur*, a plaintiff must present evidence of "(1) a casualty of a kind that does not ordinarily occur absent negligence; (2) that was caused by an instrumentality exclusively in the defendant's control; and (3) that was not caused by an act or omission of the plaintiff." *Gillespie*, 861 F. Supp. 2d at 641-42; *Norris*, 159 Md. App. at 330 (2004) ("[T]he injury must be one that does not ordinarily occur if the defendant uses proper care."). The "central

5

question" of *res ipsa loquitur* "is whether, by relying on common sense and experience, the incident more probably resulted from the defendant's negligence rather than from some other cause." *Norris* 159 Md. App. at 331. The "classic pattern" of *res ipsa loquitur* involves a plaintiff injured by a falling object. *Blankenship v. Wagner*, 261 Md. 37, 42 (1971).

Courts applying Maryland law have allowed plaintiffs to invoke *res ipsa loquitur* under circumstances similar to this case. In *Anderson v. Home Depot U.S.A., Inc.*, No. GJH-14-2615, 2017 WL 2189508, at *7 (D. Md. May 16, 2017), *res ipsa loquitur* was used because a metal bracket affixed to a shelving unit fell onto a customer when they were retrieving an item from a shelf. In *Gillespie*, it was used when a light fixture fell onto a customer while she was eating her lunch. 861 F. Supp. 2d. at 641-42. And in *Norris*, it was used when a metal shelving unit collapsed onto a customer. 159 Md. App. at 335. There are other examples. *See, e.g.*, *Blankenship*, 261 Md. at 40 (1971) (delivery man carrying refrigerator fell through steps at property owner's residence); *Leikach v. Royal Crown Bottling Co. of Baltimore*, 261 Md. 541, 547 (1971) (glass bottle of soda exploded, causing plaintiff to lose an eye); *Leidenfrost v. Atl. Masonry, Inc.*, 235 Md. 244, 247 (1964) (pile of slag blocks fell onto employee on a construction site).

**D.    A Reasonable Jury Could Find That DSG Was Negligent**

Construing the undisputed facts in the light most favorable to Plaintiffs, a reasonable jury could find that DSG was negligent.[4] There is circumstantial evidence that while Ms. Morgan was

---

[4] DSG argues that Plaintiffs failed to properly oppose its Statement of Undisputed Material Facts. ECF No. 70. Relying on the local rules of other courts, DSG accuses Plaintiffs of "fail[ing] to do the specific task required of a non-moving party in responding to a moving party's Statement of Undisputed Material Facts." *Id.* at 2. But neither Rule 56 nor this Court's Local Rules require what DSG argues. As the Court has explained before, "undisputed facts" presented in statements like DSG's are rarely undisputed. They tend to make briefs longer, more confusing, and generally less helpful. This Court has previously criticized the inclusion of such statements of undisputed facts in summary judgment briefs. *See Wang v. AMDEX Corp.*, No. TJS-22-2266, 2024 WL

shopping in the women's clothing section of the store, a sign fell on her head, leading to Plaintiffs' injuries. Determining whether Ms. Morgan was injured by a falling sign, something else, or not injured at all is a decision for the jury. The Court declines DSG's invitation to construe the facts against Plaintiffs. DSG's arguments might persuade a jury at trial, but they do not work under the constraints of Rule 56.

All three elements of *res ipsa loquitur* are satisfied here.[5] The first element is satisfied because signs do not ordinarily fall onto customers' heads absent negligence. The second element is satisfied because the sign was exclusively within DSG's control. And the third element is satisfied because there is no evidence that Ms. Morgan (or any other customer) interfered with the sign, causing it to fall. Applying common sense and human experience, a reasonable jury could conclude that Ms. Morgan was injured because the sign fell on her head, and that Plaintiffs' injuries were caused by DSG's negligence.

As explained below, the Court will exclude the opinions of Plaintiffs' proffered expert from evidence. There is thus no direct evidence of negligence in this case. *See Anderson*, 2017 WL 2189508, at *7 ("As the Court has already struck Plaintiff's expert testimony, Plaintiff has presented no other direct evidence of negligence in this case.") (citing *Curry v. J.C. Penney Corp.*,

---

964667, at *6 n.5 (D. Md. Mar. 6, 2024); *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, No. SKG-10-254, 2011 WL 4007948, at *2 (D. Md. June 17, 2011).

[5] DSG argues that Plaintiffs are precluded from relying on *res ipsa loquitur* because they have proffered expert evidence as to the cause of the accident. ECF No. 70 at 14-15. DSG's argument relies on *Dover Elevator Co. v. Swann*, 334 Md. 231, 236 (1994), where the court held that a plaintiff could not rely on *res ipsa loquitur* in a case where direct evidence (including expert testimony) had been presented at trial as to the "complex and technical nature of the probable cause" of an accident. But this case is in a different posture, and Plaintiffs are permitted to rely on alternative theories at the summary judgment stage. *See Breeden v. Wal-Mart Real Est. Bus. Tr.*, No. JMC-20-2139, 2021 WL 5166380, at *4 (D. Md. Nov. 4, 2021).

No. WGC-09-830, 2010 WL 972430, at *7 (D. Md. Mar. 12, 2010)). The evidence supporting Plaintiffs' claims is circumstantial.

Contrary to DSG's argument, expert testimony is not required to establish causation here. That display signs should not fall onto customers' heads while shopping is not a matter "beyond the ken of the average layman." *See Johnson v. State*, 457 Md. 513, 530 (2018) ("Expert testimony is required only when the subject of the inference [to be drawn by the jury] is so particularly related to some science or profession that it is beyond the ken of the average layman.") (internal quotation marks omitted). And laypeople do not need expert assistance to understand that storeowners must take care to install signs so that they do not fall on customers. *See Rodas v. Fountainebleau Corp.*, No. ADA-22-2601, 2024 WL 3424082, at *4 (D. Md. July 16, 2024) (explaining that expert testimony is not required to establish whether a hotel room tub was unreasonably dirty or slippery); *Johnson-Howard v. AECOM Special Missions Servs., Inc.*, No. JRR-19-614, 2023 WL 6216604, at *7 (D. Md. Sept. 25, 2023) ("[T]here is nothing to suggest that the standard of care Defendants must exercise in cleaning/mopping the lobby floor is beyond the knowledge and experience of the average layman."). Laypeople know that objects placed on high shelves can fall if they are not affixed to a stationary object or displayed in a manner that prevents them from tipping over. A jury may properly infer DSG's negligence using *res ipsa loquitur*; expert testimony is not required.

Because a reasonable jury could find in Plaintiffs' favor, DSG is not entitled to summary judgment. Its Motion for Summary Judgment (ECF No. 49) is **DENIED**.

### III.   DSG's Motion to Exclude Plaintiffs' Expert

DSG moves to exclude evidence from Plaintiffs' liability expert, Jerry Birnbach, because his opinions are unreliable and speculative. ECF No. 50. It claims that Birnbach's purported expert

opinions are not based on any identifiable methodology or industry standards, but are instead personal opinions. *See* ECF No. 55.

Under Rule 104(a) of the Federal Rules of Evidence, the Court is responsible for determining preliminary questions conerning the qualification of a person to be a witness and the admissibility of evidence, including the admissibility of expert testimony under Fed. R. Evid. 702. "With regard to expert testimony, it is well settled that '[t]he party seeking admission of the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence.'" *Maryland v. Dent*, No. ELH-18-360, 2019 WL 1795531, at *1 (D. Md. Apr. 23, 2019) (quoting *Fireman's Fund Ins. v. Tecumseh Prods. Co.*, 767 F. Supp. 2d 549, 553 (D. Md. 2011)).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"Expert testimony is admissible under Rule 702, then, if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999) (citing *Daubert*, 509 U.S. at 592).

> The first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable—that is, whether it is supported by adequate validation to render it trustworthy. The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue. Thus, an expert's testimony is admissible under Rule 702 if it rests on a reliable foundation and is relevant.

9

*Id.* at 260-61 (internal citations and quotation marks omitted). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (holding that the *Daubert* standard also applies "to the testimony of . . . other experts who are not scientists").

When exercising its "gate keeping function" to consider the admissibility of expert testimony, the Court undertakes a "flexible" inquiry, "focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." *Westberry*, 178 F.3d at 261 (quoting *Daubert*, 509 U.S. at 594-95). The Fourth Circuit has directed district courts considering the admissibility of expert testimony to "be conscious of two guiding, and sometimes competing, principles." *Id.* at 261.

> On the one hand, the court should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence. And, the court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to being tested by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof. On the other hand, the court must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading. And, given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded.

*Id.* (internal citations and quotation marks omitted).

When applying *Daubert* to challenged expert testimony, courts typically consider multiple factors, including

> (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community.

*United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593-94). These factors are meant to ensure that "an expert, whether basing his testimony upon professional

studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. The factors are not a "definitive checklist," and not all factors necessarily apply in a given case. *Id.* at 150-51.

Birnbach is a "retail safety expert." ECF No. 57 at 3. He has bachelor of science degrees in architectural technology and architecture, and is a member of a number of professional organizations. *Id.* He has experience as a quality control engineer, as a director of store planning, maintenance, and new store construction, and as an executive in charge of store design, display design, and retail safety. *Id.* at 4. Given his training and professional experience, Birnbach has formed opinions about retail safety policies and procedures, including how to ensure retail signs are safely displayed. *Id.* Birnbach says the industry standard is that retail signs should not fall on customers' heads. *Id.* at 5. He opines that DSG breached its duty to Ms. Morgan by, among other things, failing to train its employees to recognize the hazards presented by display signs, failing to follow its own procedures, and generally failing to ensure its store was safe for customers. *Id.* If DSG had complied with the industry standard, the sign would not have fallen onto Ms. Morgan's head. *Id.*

Birnbach's opinions are not based on any particular scientific theory that can be tested. And they are not based on a methodology subjected to the rigors of peer review and publication. Instead, his opinions are based on his experience. When considering whether an opinion based on an expert's experience is reliable, courts consider whether the expert has explained "how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *United States v. Wilson*, 484

F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee's notes on 2000 amendments). Birnbach may pass this test, but not because he is an expert.

Birnbach's opinions would not be helpful to a jury because they are not based on any specialized knowledge. Laypeople know that signs should not fall on customers' heads while they are shopping in a store. They know that objects placed in high places can fall down if not properly secured. And they know that falling objects can cause injury. They do not need an expert to tell them these things. *See Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) ("Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror.") (citing *Persinger v. Norfolk & Western Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990) (explaining that testimony about how difficult it is to lift heavy things is not "helpful" and is thus excludable)). Because Birnbach's opinions would not help the jury, their admission would be improper under Rule 702. *See Cook v. Wal-Mart Stores E., LP*, No. 1:19CV00031, 2020 WL 7481781, at *3 (W.D. Va. Dec. 18, 2020) ("I will exclude Birnbach's testimony because 'it concerns matters within the everyday knowledge and experience of a lay juror.'") (quoting *Kopf*, 993 F.2d at 377); *see also Janezich v. Walmart, Inc.*, No. 21-CV-01808-CMA-MDB, 2023 WL 3096812, at *5 (D. Colo. Apr. 26, 2023) (excluding Birnbach's opinions because they did not require specialized knowledge and were opinions a layperson could form, and would thus not be helpful to a jury). His testimony must be excluded.

For these reasons, the Motion to Exclude and/or Strike Expert Testimony (ECF No. 50) is **GRANTED**.

### IV.   DSG's Motion to Strike Exhibits

DSG moves to strike certain exhibits attached to Plaintiffs' response to the Motion for Summary Judgment. ECF No. 66. The Court has not considered any of the disputed exhibits in

making its decision on the motion for summary judgment. Accordingly, the Motion is **DENIED AS MOOT**. And to the extent that the motion seeks to exclude evidence at trial, it is premature. DSG may present arguments about the admissibility of evidence at trial in a motion *in limine*. The Court declines to make evidentiary rulings for trial in a vacuum, especially when the evidence at issue is so unimportant the parties' claims and defenses.

### V.     Conclusion

For the reasons set forth above, DSG's Motion for Summary Judgment (ECF No. 49) is **DENIED**, its Motion to Exclude and/or Strike Expert Testimony (ECF No. 50) is **GRANTED**, and its Motion to Strike Certain Exhibits (ECF No. 66) is **DENIED AS MOOT**.

Within 14 days of the date of this Memorandum and Order, the parties shall file a joint status report indicating whether they wish to (1) participate in another settlement conference with Judge Simms or (2) schedule the case for trial.

August 14, 2024                                                                /s/
Date                                                                                  Timothy J. Sullivan
                                                                                          Chief United States Magistrate Judge